INHABITANTS OF LISBON, <em>Petitioners, versus</em> INHABITANTS OF BOWDOIN.

</div>

By R. S., c. 3, § 30, when a town petitions the Court, stating that a controversy exists between it and an adjoining one respecting a town line or lines, the Court may appoint commissioners, who shall " *ascertain* and *determine* the line or lines in dispute," and make duplicate returns of their proceedings, one to the Court, and the other to the office of the Secretary of State; and such line or lines, shall be deemed in every court of law, and for every purpose, the true dividing line or lines between such towns.

The validity and efficacy of the proceedings of the commissioners must be determined upon the facts appearing on the reports.

If the report does not " *ascertain* and determine" the line, the " controversy" is not terminated, and commissioners may be appointed on a new petition.

A report declaring that the commissioners do " *award* and determine" that a certain defined line " shall be the true boundary," &c., does not make it certain that they did not establish a *new* line, instead of *ascertaining* and *renewing* the *old* one, and hence is insufficient.

ON REPORT from *Nisi Prius*, WALTON, J., presiding.

PETITION for the appointment of commissioners to "ascertain and determine" the boundary line between Lisbon and Bowdoin near the " Hall bridge," so called. The petition

was dated April, 1864,. and signed by the selectmen of Lisbon.

The respondents put in copy of a petition entered at the August term, 1862, of S. J. Court for Sagadahoc county, together with the proceedings thereon, including the report of the commissioners appointed under the latter petition. So much of that report as is material to this case was as follows : — "The undersigned, commissioners, appointed," &c., " having notified and met the parties," &c., " do *award* and determine that the following described line *shall be* the true boundary line between the towns of Bowdoin and Lisbon." Then follows a line described by monuments, courses and distances.

*A. P. Moore*, for the petitioners.

*Tallman & Larrabee*, for the respondents.

KENT, J. — The petitioners allege that a controversy exists between them and the adjoining town of Bowdoin respecting town lines, and pray for the appointment of commissioners to ascertain and determine the line or lines in dispute.

The right and duty of the Court, as to such appointment, depends upon § 30, c. 3, of the R. S. " When a town petitions the Court, stating that a controversy exists between it and an adjoining town respecting a town line or lines," the Court, after notice, may appoint three commissioners, who shall *ascertain and determine* the line or lines in dispute — and make duplicate returns of their proceedings — one of which shall be returned to the Court and the other to the office of the Secretary of State, " and such line or lines shall be deemed in every court of law, and for every purpose, the true dividing line or lines between such towns."

The allegations in the petition, if true, are sufficient to give this Court authority to appoint the commissioners as prayed for. But the respondents deny the first allegation, viz., that a controversy exists. They say a controversy did

once'exist, but that it has been terminated by proceedings under this section, on their own petition, and that the line in dispute has been legally fixed, so that it must be deemed in every court of law, and for every purpose, the true divid-ing.line, and that no " controversy" can be said to exist re-specting it.

The question then, is, —Is there an existing' controversy, within the meaning of the statute. It is clear that, if there has been a legal determination of the questions in dispute, binding on both parties, there can be no longer a legal con-troversy, however much either or both parties may be dis-. satisfied, or however strenuously they may insist upon con-tinuing the controversy concerning their town lines.

What has been determined? It appears that the town of Bowdoin, by its selectmen, by their petition to this Court, in 1862, represented that the selectmen of the two towns had undertaken to perambulate the lines between the two towns, but that a controversy arose between them as to one of the lines, whilst they were attempting to *renew and estab-lish* the lines between the towns. They thereupon pray that commissioners may be appointed under the provisions of this third section. Such commissioners were appointed by this Court, and they were directed to "*ascertain* and *deter-mine*" the 'line in dispute. They undertook to do so and made a report, in which they say, that after hearing the par-ties, they " do award and determine that the following de-scribed line *shall be* the true boundary line between the towns of Bowdoin and Lisbon." A description of the line then follows. This report was made to the Court as required by law. The report was accepted, and a warrant of distress for cost was· ordered to be issued against both towns.

Did these proceedings legally fix and determine the line in dispute, so' that no question or controversy could after-wards arise? The objection, which appears on the face of the papers, is, that the commissioners, according to their re-port, did not " ascertain and determine" the line, but simply declared that a certain defined line " *shall be* the true bound-

ary between the towns. The declaration or determination that a certain line *shall be* the true line does not necessarily assert that it *is* the true line, or the line which they were directed to ascertain and determine. All that the report sets out may be true, and yet the described line may be a new and arbitrary line, departing entirely from the boundaries established by the Legislature, and one which the commissioners think on the whole more convenient or just, than the old and established line.

It is well settled that the boundaries of towns are created by Act of the Legislature and cannot be changed by any other power. The consent even of towns cannot change them. *Ham* v. *Sawyer*, 38 Maine, 41. This Court has no power to change them.

It is equally clear that commissioners, appointed by the Court, cannot alter or depart from the boundaries established by the Legislature. Their duty is to determine, in case of a dispute, where and how the line in question is to be run and established on the face of the earth. Their determination may be erroneous, but it is binding on the parties, if they keep themselves within the power given, and if their report shows that they simply undertook to ascertain and determine where the line given by the Legislature was in fact. But this should appear by their report; at least nothing should there appear which leaves in doubt, whether the line established by them is the old line or a new and arbitrary one. This report does not follow the language of the statute, and, under it, we cannot be certain that it is not an entirely new line, as alleged by the petitioners.

We come to this conclusion upon the face of the papers, without reference to the offered parol testimony.

The statute does not require any judgment or action by this Court on the report. It does not even require an acceptance. It simply directs that the report shall be made in duplicate, and that one of the originals shall be returned to the Court and the other to the office of the

Secretary of State. The validity and efficacy of the proceedings must therefore be determined upon the facts as they appear on the reports filed in the Court and in the Secretary's office.

There is no judgment of the Court which requires a writ of error or *certiorari* to set it aside. If the report does not follow the requirements of the statute, and does not ascertain and determine the line, then the "controversy" is not terminated, but still exists. The prior proceedings may be deemed invalid and ineffectual, and the whole matter is open for the appointment of commissioners.

That part of the report, which directs how the bridge and a portion of a road are to be built and supported, is clearly beyond the power of the commissioners. But this would not necessarily have vitiated the other part, if the line had been legally ascertained. It might have been regarded as surplusage or excess of authority, not invalidating the other portion. *Prayer of petition granted.*

*Commissioners to be appointed.*

APPLETON, C. J., CUTTING, DICKERSON and TAPLEY, JJ., concurred.